**MICHAEL D'ALESSIO, JR.**
ATTORNEY AT LAW

80 MAIN STREET
SUITE 260
WEST ORANGE, NEW JERSEY 07052

(973) 736-1500
Facsimile: (973) 736-0152

EMAIL: MDALESSIO@DALESSIOLAW.COM

July 6, 2015

The Honorable Susan D. Wigenton
U.S. District Court, District of New Jersey
M.L. King, Jr. Federal Building & Cthse
50 Walnut St
Newark, New Jersey 07102

    Re: *United States v. Richard Adebayo*,
       Mag. No. 14-3746

Dear Judge Wigenton:

  Defendant Richard Adebayo respectfully submits this memorandum in support of his Motion to Revoke the Order of Detention issued by the Magistrate Judge, pursuant to 18 U.S.C. §3145(b). Contrary to the specific report and recommendation of the Pretrial Services Agency, the Magistrate Judge issued an order of detention for Adebayo. During the initial hearing, the Magistrate Judge found that Adebayo did not present a risk of flight, but improperly ordered detention based on the potential harm Adebayo posed to the community. Several months later, Adebayo retained new counsel, who requested that the Magistrate reconsider the detention order based on the Court's misapplication of the Bail Reform Act of 1984, 18 U.S.C. §3141 *et seq*. The Magistrate conducted another detention hearing and reversed course by concluding that Adebayo was, in fact, a flight risk. As such, the Magistrate ordered that Adebayo remain in custody.

Adebayo now seeks an independent review of the detention order. The Magistrate Judge erred in determining that Adebayo was a flight risk under the factors enumerated in 18 U.S.C. §3142(g). Adebayo has proven through other court appearances that he has no intention to flee. He has strong family ties in the area and would not jeopardize the well-being of his family, particularly considering the relatively minor punishment he is facing for the pending allegations. The Bail Reform Act favors pretrial release of a defendant, and its goal is to secure the appearance of the accused at trial. Adebayo's future appearance at court hearings can be reasonably assured by the imposition of appropriate bail conditions.

## I.   BACKGROUND AND PROCEDURAL HISTORY

### A. Charges and Arrest

On April 1, 2014, Adebayo was arrested in New Jersey by local authorities outside a luxury goods store after allegedly making purchases with a fraudulent credit card. Adebayo was charged with identity theft, conspiracy to commit identity theft, credit card theft, and fraudulent use of credit cards. On April 12, 2014, Adebayo posted bail on the state charges. Thereafter, Adebayo and his family relocated to Dallas, Texas for an employment opportunity. Prior to leaving New Jersey, Adebayo registered his change of address with the Essex County Clerk's Office.

On September 16, 2014, Adebayo was charged in the District of New Jersey in a Criminal Complaint (the "Complaint"), based on the same conduct forming the basis of the New Jersey state charges. The Complaint alleges that from March 21, 2014 through April 1, 2104, Adebayo conspired to commit wire fraud in violation of 18 U.S.C. §1343. The Complaint also contains two counts of aggravated identify theft, in violation of 18 U.S.C. §1028A and 2. *See* Mag. No. 14-3746(JAD) Doc. No.1. According to the Complaint, on March 21, 2014, Adebayo

and his codefendant made purchases totaling $16,000 at a luxury clothing store using a credit card and driver's license in the name of Victim 1. When the credit card company denied the transaction, Adebayo allegedly used his laptop to access the credit card account and approve the transaction. On April 1, 2014, Adebayo and his codefendant allegedly made purchases totaling $87,000 at another luxury goods store using a credit card and driver's license in the name of Victim 2. Again, the credit card company denied the purchases and Adebayo allegedly used his laptop to access the credit card account and approve the transaction.

On September 19, 2014, Adebayo was arrested in Texas on the federal warrant and transported back to New Jersey. On October 15, 2014, Adebayo appeared before the Honorable Joseph A. Dickson, United States Magistrate Judge, for his initial appearance. During the proceeding, Adebayo consented to detention without prejudice. 10/15/14 Hr. Tr. at 5.

### B. Detention Hearing and Motion for Reconsideration

On November 7, 2014, Adebayo, represented by prior counsel, filed a motion to modify the order of detention and seeking release on bail. On November 21, 2014, a bail hearing was held before the Honorable Michael A. Hammer, United States Magistrate Judge. At the outset of the hearing, Judge Hammer specifically held that Adebayo was not a flight risk, stating: "With the wife and children here, I'm less concerned about the risk of flight. I know that's one of --- one of the government's articulated concerns. But to be completely candid, to give you fair opportunity, I'm very concerned about the risk of harm to the community. . ." 11/21/14 Hr. Tr. at 5. Judge Hammer ultimately ordered detention based solely on the danger Adebayo posed to the community in the form of economic harm. The court relied on the fact that: 1) he was facing similar charges in Ohio and 2) a search of Adebayo's laptop revealed stolen identities of other individuals and false credit card information. The court further held that no conditions of bail

were sufficient, reasoning "I am deeply concerned that notwithstanding the restrictions, if I were to let Mr. Adebayo out on bail, he would not stop and would find a way to use computers or other devices to commit fraud." 11/21/14 Hr. Tr. 16:10-14.

Upon retaining new counsel, on May 7, 2015, Adebayo filed a second Motion to Revoke the Order of Detention, based on the court's erroneous application of the Bail Reform Act, 18 U.S.C. §3141, *et seq*. Under the Act, detention is limited to cases involving specific crimes or when the defendant represents a serious risk of flight or obstruction. The court did not find that Adebayo fell into any of these categories, therefore any danger he posed to the community could only be considered in setting the conditions of release and could not form the basis of detention.

Upon reconsideration, the court agreed that it improperly based the order of detention on the risk to the community, but held that it made no prior finding regarding Adebayo's risk of flight. 6/4/15 Hr. Tr. 5-6. The court found that that the nature of the charges weighed against Adebayo and the evidence against him was strong. *Id*. at 42-44. The court gave significant weight to the fact that Adebayo is facing similar charges in Ohio, where he was found to be in possession of a device used to manufacture identity cards. According to the court, Adebayo has the ability to travel abroad using fake identity cards and may have already done so, based on a 2012 email submitted by the government. The court also gave some weight to the fact that GPS information in Adebayo's phone indicates travel to China, although there is no record of Adebayo himself traveling to China. *Id*. at 45-47. The Court also stated that Adebayo has significant ties overseas and has family in Nigeria, has access to foreign bank accounts, and as established at the previous hearing, presents a risk to the community. *Id*. at 47. In ordering detention, the court concluded that home detention would not suffice in this case because "defendant not only has demonstrated the capacity to obtain fake identification, but the evidence

is that he has used it to travel, to book hotels, and to buy goods and items of, at times, significant value." As such, the court found that Adebayo presents more of a flight risk than the usual defendant and ordered detention. *Id.* at 48-49.

## II. LEGAL ARGUMENT

Generally, a defendant must be released on bail on the least restrictive condition or combination of conditions that will reasonably assure the defendant's appearance and the safety of the community. 18 U.S.C. § 3142(c)(1)(B); *United States v. Himler*, 797 F.2d 156, 159 (3d Cir. 1986). The Bail Reform Act of creates a very narrow set of circumstances in which the court has the authority to consider whether no conditions of release will assure appearance and safety of the community, and then whether the defendant may be detained pending trial. *Id.* (citing 18 U.S.C. § 3142(e), (f)). Prior to considering detention – as opposed to setting conditions of release – the court must first determine that the case involves: 1) certain types of violent crimes or narcotics offenses; 2) a serious risk that the person will flee; or 3) a serious risk that the person with obstruct justice or intimidate a witness or juror.

In this matter, during the first detention hearing in November 2014, the court failed to find one of these three conditions before ordering detention. The only category applicable to Adebayo was risk of flight under 18 U.S.C. 3142(f)(2)(B), and the court determined that he did not pose a risk. Rather, the court based detention on the risk of harm to the community. During the second detention hearing, the Magistrate Judge reversed course and determined that Adebayo was a flight risk, as set forth above, and maintained that continued detention was appropriate. For the reasons set forth below, Adebayo does not present a risk of flight and there are conditions of release that will reasonably assure his appearance at future court appearances. This Court's review of the detention order is plenary, and Adebayo respectfully requests that the court

July 6, 2015
Page **6** of **13**

conduct an independent review of the record and reverse the detention order. *Himler*, 797 F.2d at 159.

### A. Adebayo Does Not Present a Risk of Flight.

In considering a motion for detention, the Court must determine whether the Government has established by a preponderance of the evidence that Adebayo presents a risk of flight. *Himler*, 797 F.2d at 161. The Bail Reform Act does not require that the risk be zero, but that the conditions imposed "reasonably assure" appearance. *United States v. Madoff*, 586 F. Supp. 2d 240, 279 (S.D.N.Y. 2009) (citing *United States v. Friedman*, 837 F.2d 48, 49 (2d Cir.1988)); see also *United States v. Chen*, 820 F.Supp. 1205, 1208 (N.D. Cal. 1992) (Section 3142 does not seek ironclad guarantees against flight). Doubts regarding the propriety of release should be resolved in the defendant's favor. *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991). In making this determination, the Court must consider a set of four factors:

1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence;

2) the weight of the evidence against the defendant;

3) the history and characteristics of the defendant (i.e., criminal history, community ties, length of residence in the community, employment, financial resources, drug use); and

4) the nature and seriousness of the danger to any person or the community that would be posed if the defendant is released.

18 U.S.C. §3142(g). Other relevant factors include the use of aliases, unstable residential ties, efforts to avoid arrest, and hidden assets. *United States v. Schenberger*, 498 F. Supp. 2d 738, 742 (D.N.J. 2007). The government's task is not insubstantial at this second stage. In most cases, release is the presumptive state. *Madoff*, 586 F. Supp. 2d at 247 (citing 18 U.S.C. §§

3142(b) and (c)). "The court should also bear in mind that it is only a limited group of offenders who should be denied bail pending trial." *Id*. at 247-48 (internal citations omitted).

First and foremost, there is no absolutely no indication that Adebayo intends to flee. See e.g., *United States v. Cole*, 715 F.Supp. 677, 679 (E.D. Pa. 1988) (defendants posed a serious flight risk because they held and used foreign passports and told undercover agents they would flee if arrested); *United States v. Sharma*, No. 03-80146-CR-Marra (S.D. Fla. May 24, 2004) (defendant detained where he had familial and business ties to India and he stated if he ever got into trouble, he would go to India and obtain a fraudulent death certificate through his contacts); *United States v. Burstyn*, No. 04-60279-CR-Zloch (S.D. Fla. Mar. 18, 2005) (detention ordered for defendant/lawyer who advised his clients to flee prosecution, evidencing a serious intent to flee his own prosecution). To the contrary, Adebayo has always made scheduled court appearances in other matters. He successfully completed six months of probation in Union County, New Jersey in 2013. Adebayo has also made all scheduled court appearances in Franklin County, Ohio, for a case pending since September 2013. He travelled with his wife and children more than five times to appear in court in Ohio, driving 19 hours each time. In this matter, while released on bail for the state charges, Adebayo relocated to Texas, but updated his address with the Essex County Court, the Department of Motor Vehicles, and the Department of Homeland Security, indicating that he has no intention of fleeing prosecution. If Adebayo intended to flee prosecution, he would have already done so in these other matters.

The nature and circumstances of the offense also weigh heavily against the risk of flight. Without diminishing the seriousness of his offenses, they are relative minor compared to other financial crimes and do not involve the potential for significant penalties. The Complaint is based on two alleged instances of identity theft and involves a total of $103,000 and only two

victims. According to the government, if convicted, Adebayo faces up to two to four years of imprisonment, This does not contemplate departure and variance motions, Adebayo's minimal criminal history and the fact that he has already been incarcerated for over nine months. This is not a situation in which the defendant is facing decades or a lifetime in prison. The potential penalty he would face for fleeing greatly outweighs the sentence he could face for the charges, and this certainly mitigates the potential for flight.

The weight of the evidence against Adebayo also does not favor detention. At the detention hearing, the government and the Court relied on evidence seized from Adebayo's home and computer. However, Adebayo intends to challenge the admissibility of this evidence, all of which relates to crimes not charged in the Complaint. Moreover, Adebayo has not been formally charged in an indictment nor has the case gone to the grand jury.

Adebayo's strong family ties in New Jersey also strongly support that he is not a flight risk. Adebayo is 38 years old and has been a legal resident of the United States since 2010. He was born in Nigeria and left in 2008 in search of a better life in the United States. He is a devoted husband and father of two young children. If Adebayo were to flee, he would be forced to abandon his young family, both physically and financially. It is improbable that Adebayo would jeopardize their well-being, particularly considering their devotion to each other during his incarceration. His family has travelled long distances with him to attend court appearances and has emotionally supported him. While the government maintains that Adebayo's family could flee with him, this could be addressed by insuring that his wife surrenders her United States and Nigerian passports.

Adebayo also has strong ties with his community, as an active church member and volunteer in his community. Adebayo has a strong work ethic and has been employed since the

age of 15, when he began working as a drycleaner at Adebayo Laundry. He worked at Evergreen Tutors as a mathematics tutor and later served as Manager/CEO of Richbayo LLC, a business he registered in May 2012 in New Jersey. While running his business, Adebayo also started to prepare to enroll at Phoenix University to study criminal law. He had no history of drug abuse and is physically and mentally stable. Adebayo is unlikely to abandon the life he has made in the United States, particularly in light of the relatively minor sentence he could face.

Finally, Adebayo does not have the ability to flee. He has already relinquished his passport, eliminating the possibility of him leaving the country. The government has not offered any evidence that Adebayo has used aliases, other than an email from 2012 which makes a vague reference to a passport that was not in his name. See *Himler*, 797 F.2d at 162 (possession of one false form of identification was not enough, by itself, to justify pretrial detention, where there was no evidence of actual intent to flee). Adebayo has never been caught using a fake passport and the government did not seize one during the search of his home. Although the computer seized allegedly contains information belonging to 70 individuals for the purpose of committing credit card fraud, this does not mean that Adebayo has the ability to obtain a passport under one of these identities, which is presumably far more difficult to procure. There is also absolutely no evidence that Adebayo has access to identities other than the ones already seized from his computer. The government has not provided evidence that Adebayo is part of larger scheme in which he could readily access other identities to assist him in fleeing prosecution. In addition, if Adebayo was caught trying to use another person's identity while out on bail, he would be subject to an additional term of imprisonment of up to ten years, which would run consecutive to any other term of imprisonment, under 18 U.S.C. §3147. Given the relative shorty punishment

he currently faces, it is unlikely that he would jeopardize his freedom by committing another offense.

The Magistrate also found that Adebayo has significant ties overseas and access to foreign bank accounts. However, both of these claims are unsupported by the evidence. Adebayo's contacts in Nigeria are minimal and would not provide him with an opportunity to flee. He has not spoken to his mother in Nigeria since 2010, nor is he in contact with his other family members in Nigeria. As a result of the economic conditions in Nigeria, his mother has been in financial trouble most of her life and she would not have the financial ability to transport him to Nigeria or harbor him. The government and the Magistrate rely solely on the fact that Adebayo is a citizen of Nigeria, without proof that he has family, business associates, assets or any support waiting for him in Nigeria. Adebayo's ties are in New Jersey with his wife and children.

While he is charged with economic crimes, Adebayo does not have a stockpile of wealth or offshore accounts that he can rely on to sustain himself if he were to flee, and the government failed to substantiate the claim that Adebayo has access to foreign bank accounts. Adebayo's wife and father-in-law currently provide support for him, and they have limited financial means. Other than the seized accounts, the government failed to show that Adebayo has the financial ability to flee. Moreover, in *United States v. Giordano*, the Southern District of Florida held that merely having access to significant funds is not enough to prove a serious risk of flight; rather, evidence of strong foreign family or business ties is necessary to detain a defendant. 370 F. Supp. 2d 1256, 1264 (S.D. Fla. 2005). Adebayo lacks all of these things.

Finally, Adebayo does not pose a threat to the community if released. Adebayo is not accused of violent or terroristic crimes. Rather, the charges are based solely on economic

crimes. The government has taken away his ability to commit other crimes by seizing his computers and the information he allegedly possessed on other individuals. The government cited the risk that Adebayo would perpetrate a similar crime based on information seized from his laptop. However, Adebayo intends to contest this search. Moreover, the Court could fashion conditions of release that would minimize this risk, as discussed below, including prohibiting the use of his laptop or similar devices.

Overall, the factors weigh in favor or Adebayo's release. The Third Circuit, in *Himler*, ordered release in similar circumstances. The defendant was charged with using false identification, and the magistrate ordered detention based on the nature of the crimes, the defendant's repeated offenses, and the possibility that he would use his aliases to avoid prosecution. In rejecting the detention order, the Third Circuit found that there is no *per se* presumption of flight were the crime charged involves the production of fraudulent identification. The court focused on the fact that the defendant always appeared in court when accused of similar crimes and found that conditions could be imposed to insure his appearance. Compare *United States v. Maull*, 773 F.2d 1479 (8th Cir. 1985) (defendant previously fled prosecution, was found to have a secret passport, and had contacts with persons abroad who could aid his flight); *United Sates v. Vortis*, 785 F.2d 327 (D.C. Cir. 1986) (defendant had a safe deposit box with 13 passports plus other forms of identification, was suspected leader of fraudulent identification and airline ring, and was travelling to Liberia at the time of arrest). Importantly, the Third Circuit held that mere *opportunity* for flight is not sufficient grounds for pre-trial detention. *Id*. at 162.

Here, the Magistrate erroneously relied on what it perceived to be Adebayo's "opportunity for flight." First, as outlined above, Adebayo does not have the ability to flee

because he lacks the necessary financial resources and foreign ties to secure his flight. Even if he had the ability to flee, Adebayo has proven through repeated court appearances and his strong ties to New Jersey that he does not intend to flee prosecution, particularly in light of the relatively minor sentence he faces if convicted.

### B. There are less restrictive conditions that will assure his appearance.

Despite the overwhelming proof that Adebayo is not a flight risk, if the Government carries this initial burden, the Court must determine whether there are reasonable conditions of release that can be set or whether detention is appropriate. 18 U.S.C. 3142(c)(1)(B). Even where the defendant may present a serious risk of flight, there is a statutory presumption that favors pre-trial release and the Court is obligated to impose the least restrictive conditions necessary. *United States v. Salerno*, 481 U.S. 739, 754-55, 107 S. Ct. 2095 (1987) ("When the government has admitted that its only interest is in preventing flight, bail must be set by a court at a sum designed to ensure that goal, and nothing more"); see also *United States v. Riccardi*, 2002 WL 1402232 at *1 (D. Kan. 2002) ("By its very language, the Act demonstrates its favorable inclination toward pretrial release of a federal criminal defendant"); *United States v. DeBeir*, 16 F.Supp.2d 592, 593 (D. Md. 1998) ("The Act favors release of defendants awaiting trial"). There are various conditions that the Court could impose that will "reasonably assure" Adebayo's appearance and the safety of the community.

The most effective condition would be the use of an electronic monitoring device, which courts have recognized as an effective means of deterring flight. See e.g., *United States v. O'Brien*, 895 F.2d 810, 815-16 (1st Cir. 1990); *United States v. Demmler*, 523 F.Supp.2d 677, 684 (S.D. Ohio 2007). As suggested by Pre-Trial Services, the Court could prohibit the use of computers or other similar devices to reduce the possibility of Adebayo committing other crimes.

July 6, 2015
Page **13** of **13**

The Court could also require house arrest or set a curfew, which would limit Adebayo's access to other individuals and his access to computers outside of the home.

The Court could also set bond to be posted by Adebayo's wife and father-in-law. Given his strong relationship with his young family, it is unlikely that he would inflict an immense financial loss on them. Finally, the Court could order that his wife and children surrender all passports and travel documents to insure that the family does not attempt to flee together. These conditions would "reasonably assure" Adebayo's appearance and the safety of the community.

### III.   CONCLUSION

For the reasons set forth above, Adebayo respectfully requests that Court grant pre-trial release and impose the least restrictive conditions of bail necessary to reasonably assure his appearance and the safety of the community.

Respectfully submitted,

MICHAEL D'ALESSIO, JR

MD/pl